UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 24-53-DLB-CJS

MICHAEL THORNTON                                            PLAINTIFF

v.                              **ORDER AND**
                                 **REPORT AND RECOMMENDATION**

W. WHITNEY, et al.                                     DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Dismiss filed by Defendant W. Whitney (identified in the defense's filings as Whitney Wilson). (R. 40). Plaintiff Michael Thornton responded (R. 43) to the Motion, but W. Whitney did not reply. For the reasons explained below, it will be recommended that W. Whitney's Motion (R. 40) be denied.

**I.    BACKGROUND**

In May 2024, Thornton filed a Civil Rights Complaint to be Used by a *Pro Se* Prisoner Under 42 U.S.C. § 1983. (R. 1). In his Complaint, Thornton alleges that his constitutional rights were violated while he was an inmate at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky. (*Id.*). (Now Chief) District Judge David L. Bunning has summarized the factual allegations contained in Thornton's Complaint as follows:

> Thornton alleges that, in May of 2023, he experienced pain in his elbow and arm and was taken from the EKCC to the University of Kentucky ("UK") Hospital for surgery. Thornton says he returned to the prison after the surgery and "was told by the Nursing Staff (Wellpath) that I was able to remove the bandage and take a shower/clean my arm." Thornton suggests he did so and that this caused his arm to become infected. Thornton then alleges that he "had to be placed on 2 antibiotics" and visit "the specialist" who "said that the bandage and wrap was never suppose[d] to come off until I came to have my stitch[e]s removed," which

> was approximately three weeks later. Thornton then says, "The specialist told me that he didn't tell the prison or[ ] medical staff that, but that was the full instructions I was given as soon as I got[ ] back." Thornton suggests that, because he prematurely cleaned his arm, he now suffers from various health-related complications and may need to have an additional surgery. Thornton also says that he "complained to the Prison Nurse & APRN (Wellpath) several times & filed a grievance," but "it was sent back" because "they claimed I couldn't file one."

(R. 21 at Page ID 78-79 (internal record cites omitted)).

Thornton named several Defendants in his Complaint, but following Judge Bunning's preliminary review, only his claims against "W. Whitney" an "APRN/Wellpath" at EKCC were permitted to proceed. (*Id.* at Page ID 81 ("The Court will, however, allow Thornton to proceed with his individual capacity claims against APRN W. Whitney, the sole remaining defendant. Construing Thornton's complaint broadly, it appears that he is referring to APRN W. Whitney when describing his interactions with 'nursing staff' and the alleged instructions he received regarding the removal of his bandage and ability to shower and clean his arm after he returned to the EKCC.")). Following some delay, W. Whitney filed an Answer on April 11, 2025. (R. 31). This case was then referred to the undersigned "to conduct all further pretrial proceedings, including overseeing the discovery process and preparing proposed findings of fact and conclusions of law on any dispositive motions." (R. 33 at Page ID 164).

The course of this litigation has been impacted by Wellpath's bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Texas. *See In re: Wellpath Holdings, Inc., et al.,* No. 24-90533 (S.D. Tex. B.R.). Relevant here, counsel for W. Whitney filed a "Suggestion of Bankruptcy and Notice of Stay" (R. 29) before filing an Answer, a Supplement to the Notice of Stay (R. 32) at the time the Answer was filed, and a Motion to Stay (R. 36), in which defense counsel requested that this litigation be stayed in light of Wellpath's bankruptcy proceedings.

In May 2025, defense counsel filed a Status Report on Wellpath's Bankruptcy Proceedings and Dischargement. (R. 38). That Status Report advised that the Bankruptcy Court's Confirmation Plan had been entered and was then effective and that the Debtors (*i.e.*, Wellpath) "were discharged from liability for all claims against the Debtors involving incidents that happened before the bankruptcy (i.e., before November 11, 2024)." (*Id.* at Page ID 182). The Status Report provided information on the procedural steps an individual should take for claims against Wellpath and for claims against Wellpath employees. (*See id.*; *see also* R. 39). After Wellpath filed that Status Report, the Court entered an Order that contained additional information concerning those procedural steps. (R. 39). As to claims against Wellpath's employees, the Order advised that, "[g]enerally speaking, unless the prisoner affirmatively files a notice opt-ing out of the Third Party Release - by July 30, 2025 - most types of claims against Wellpath employees arising from events before the November 2024 bankruptcy filing date will be permanently barred." (*Id.* at Page ID 339).

On August 5, 2025, W. Whitney filed a Motion to Dismiss, arguing: "Plaintiff has failed to submit a valid opt-out notice to the Bankruptcy Court, has therefore failed to opt-out of the Third-Party Release, and is now permanently enjoined from taking any action, including the commencement, further prosecution of, or collection efforts, against the Debtors or Non-Debtor Defendants." (R. 40 at Page ID 345). On September 25, 2025, the Clerk of Court docketed a letter from Thornton in which he represents that he did send "a motion to opt out of [his] third party release," that he did so before the July 30, 2025 deadline, and that "[i]t was sent to bankruptcy court clerk for the Judge over this case." (R. 43 at Page ID 505).[1] W. Whitney did not make a

---

[1] Thornton's letter included personally identifiable information. The Court will therefore order the Clerk of Court to seal that filing. (*See* R. 43).

3

filing either in response to Thornton's letter or in reply to her Motion to Dismiss. This matter now stands submitted for review.

## II.     ANALYSIS

On this record, W. Whitney's Motion to Dismiss (R. 40) should be denied. To begin, the motion does not specify the grounds—for instance, what provision of Federal Rule of Civil Procedure 12—upon which it is based. *See Watts v. Logan*, No. 0:25-CV-10-DLB, R. 36 at Page ID 578 therein (E.D. Ky. Jan. 13, 2026) ("The Court has thoroughly reviewed the submissions of the parties, and will deny the defendants' motion to dismiss for several reasons. First, procedurally the motion fails to identify the rule under which it seeks dismissal."). Further, W. Whitney has filed an Answer, making many of the defenses under Rule 12(b) unavailable to her. *See* Fed. R. Civ. P. 12(b), (h).

Moreover, the Motion fails to cite any case law in support of its request for relief. *See Hunter v. Kerstein*, No. 4:24-CV-00562-DPM-JJV, 2025 WL 3548893, at *2 (E.D. Ark. Oct. 28, 2025), *report and recommendation adopted*, No. 4:24-CV-562-DPM-JJV, 2025 WL 3544636 (E.D. Ark. Dec. 10, 2025) (recommending denial of Wellpath employee's motion to dismiss when "Defendants [had] not cited to any caselaw supporting their contention that they are entitled to dismissal" (emphasis in original)); *see also* LR 7.1(a) ("A motion must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it."). And, the ground on which it relies—Thornton's purported failure to opt-out of the third-party release—involves matters *extrinsic* to the pleadings, *see Watts*, No. 0:25-CV-10-DLB-EBA, R. 36 at Page ID 579, and presents a factual dispute, which W. Whitney has not addressed (because she did not file a Reply to her Motion to Dismiss).

4

Finally, the Motion fails to consider that the Third-Party Release is not as straightforward as the defense advances. As Chief Judge Bunning explained in *Watts*, "the Plan expressly does not cause a Releasing Party to release claims for "willful misconduct, gross negligence, or actual fraud."" *Id.*, R. 36 at Page ID 580 (citing *in re: Wellpath Holdings, Inc.*, No. 24-95033 (S.D. Tex. Bankr. 2024) (Doc. # 2596 therein at 132 (First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates, Art. IX.D)). Thornton's Complaint alleges deliberate indifference by W. Whitney, which other courts have acknowledged may fall outside the scope of the third-party release. *See Hunter*, 2025 WL 3548893, at *2; *see also Leal v. Pinkerton*, Case No. 22-CV-1172-RJD, 2025 WL 2378002, at *3-4 (S.D. Ill. Aug. 15, 2025); *Guggenheimer v. Wellpath, LLC*, No. 3:24-CV-02242, 2025 WL 3008148, at *4 (M.D. Pa. Oct. 27, 2025).

In light of these defects, and because it is W. Whitney's burden to demonstrate that she is entitled to the relief sought through her Motion to Dismiss, it will be recommended that her Motion be denied without prejudice.[2] *Cf. Gregory v. M.D.O.C.*, No. CV 23-11957, 2025 WL 2466029, at *4 (E.D. Mich. Aug. 26, 2025) (denying a motion to dismiss by Wellpath without prejudice because "[t]he Court believes it should have a clearer understanding of . . . the impact, generally, of the bankruptcy resolution on [the plaintiff's] claims in this case before ruling on Wellpath's motion to dismiss").

### III.  CONCLUSION

Accordingly, **IT IS ORDERED** that the Clerk of Court is hereby directed to **SEAL** Thornton's September 25, 2025, letter (R. 43) as it contains personally identifiable information.

---

[2] Should this recommendation be adopted and/or should W. Whitney choose to renew her bankruptcy argument in future filings, she "should refer to the specific page numbers of the relevant portions of the Bankruptcy Order and Reorganization Plan, which [she] did not do in the current motion." *Hunter*, 2025 WL 3548893, at *2 n.3.

Further, **IT IS RECOMMENDED** that W. Whitney's Motion to Dismiss (R. 40) **be denied.**

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and the Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 10th day of February, 2026.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\Judge-CJS\DATA\Orders\civil ashland\2024\24-53-DLB Order + R&R.docx